IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LOWELL E. HAMMONS,

          Petitioner,                  2: 07 - cv - 1007 - MCE TJB

     vs.

D.K. SISTO, et al.,

          Respondents.          ORDER, FINDINGS AND

                                RECOMMENDATIONS

_____/

## I.  INTRODUCTION

Petitioner, Lowell E. Hammons, is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving a sentence of fifteen years to life imprisonment for second degree murder following a plea in 1993.  Petitioner challenges a January 27, 2006 decision by the Board of Parole Hearings ("Board") which denied him parole.  Petitioner presents two claims in this federal habeas petition; specifically:  (1) the Board's denial of parole violated his plea agreement ("Claim I"); and (2) the Board's denial violated his due process rights because there was a lack of reliable evidence demonstrating his current dangerousness ("Claim II").  Petitioner also requests an order to show cause, the appointment of counsel, reasonable discovery and an evidentiary hearing on his Claims.  For the following reasons, Petitioner's requests are denied and it is recommended that his habeas petition

1

1  be denied.

2  ## II.  FACTUAL AND PROCEDURAL BACKGROUND[1]

3  [O]n October 24th, 1992, inmate Hammons and Manuel Macias
were both at a trailer belonging to a man named Billy.  Inmate
4  Hammons had spent the night there with his girlfriend who had run
away from home the night before.  When Inmate Hammons awoke
5  on the date of the offense, Manuel Macias, who goes by the name
of Manny . . . who was staying at Billy, Dawn's (phonetic) and
6  Brian Konz, the victim – the victim was also at Billy's trailer.  At
the time Dawn liked an individual by the name of Art C. (phonetic)
7  who was the father of her then unborn child.  Dawn had been
letting Brian stay with her for the last few weeks because she lived
8  alone with her two year old child.  Dawn and Brian Konz began
sharing a beer when Manuel Macias seemed to become angry about
9  this because he liked Dawn.  Manuel Macias started calling Brian
Konz a snitch and refused to give him a ride to Dawn's apartment
10  when the victim, Brian Konz, asked him to do so.  Manuel Macias
took Dawn to her apartment and Brian Konz went to Art C.'s
11  residence.  Brian Konz called Dawn from Art's place and she got a
ride there from the brother of a friend then they picked up Art and
12  Brian Konz . . . . and returned to Dawn's apartment.  At Dawn's
apartment Brian fell asleep on the couch.  Manuel Macias called
13  and asked Dawn who was at her apartment.  Dawn told Manuel
Macias that Art and Brian were there.

14  
15  Inmate Hammons had been told by Manuel Macias before the Man
had called Dawn asking her who was at her apartment that Brian
16  Konz had been calling the man who owned the trailer Billy and
Manuel snitches.  Manuel Macias, Inmate Hammons – there's
17  something missing there but Manuel Macias and Inmate – I don't
know the word is, it reads Manuel Macias, Inmate Hammons that
18  he wanted to kick the ass of Brian Konz and Inmate Hammons
agreed to go along with him to do so.  These two individuals,
19  Manuel Macias and Inmate Hammons, armed themselves with a
sawed off 12 gauge shotgun and a knife.  They began to drive to
20  Dawn's apartment and Inmate Hammons and Manny Macias
stopped at the residence of James H.  At this residence, Inmate
21  Hammons asked for and was given shotgun shells by James.
Manuel Macias then drove down to Dawn's apartment.  Inmate
22  Hammons and Manny Macias went inside the apartment and
Hammons, who reportedly had the shotgun at the time, sat on the
23  back of the couch where Brian Konz was lying.  Manny Macias
took Dawn to her bedroom and talked to her for about five minutes

24  _____
[1] The factual background of the commitment offense is taken from the probation report
25  which was read into the record by the presiding commissioner at Petitioner's January 27, 2006
parole suitability hearing.  Petitioner attached this parole suitability hearing transcript to his
26  Petition at Exhibit C.

2

telling her the following and Manuel Macias indicated to Dawn that Brian Konz was in very serious trouble with someone who wanted to talk to him.  Manuel Macias indicates that Inmate Hammons was going to take Brian to this person in an . . . unknown location and if Brian Konz refused to go they were going to quote, do him, in the apartment or they were going to forcibly take him with them but Dawn did not want to be involved in any way and she needed to leave the apartment.  Dawn then got her baby and asked her friend Inez (phonetic) to go with her to Inez' apartment.

After these people left the apartment, Inmate Hammons and Manuel Macias took Brian in their car to a remote area in Dvore.  Manuel Macias stopped his car at a turn out and ordered Brian out of the car.  Another car pulled up so Manuel Macias ordered Brian Konz back into the back seat of his car and they drove to a place where Brian Konz was murdered.  At that location, Brian Konz was again ordered from the car and told to lie down in the dirt as he did and then Inmate Hammons or Manuel Macias shot him in the back with a shot gun and also hit him three times in the back of the head with a gun.

Manuel Macias (indiscernible) himself and Inmate Hammons from the murder scene to James' house where they had obtained the shotgun shells.  Inmate Hammons gave James the shotgun and told him it was not working and asked if he could fix it.  James then took the gun, wrapped it in a blanket and told James two of them would later go together and fix it.  Manuel Macias and Inmate Hammons then drove to Billy's trailer.  They looked excited, hyper, nervous and scared going and is roommate Eric [sic].  They took Billy to a bathroom and closed the door.  Manuel Macias told Billy that Brian Konz had been calling Manny and Billy narcs.  Billy said that they would kick his ass.  Inmate Hammons said it's been taken care of and they told Billy they had killed Brian.  Billy asked how they had done and Inmate Hammons told him the details of the murder as previously noted in this report.

(Pet'r's Pet., Ex. C at p. 11-15.)  In 1993, Petitioner pled to second degree murder.  He was sentenced to fifteen years to life imprisonment.  On January 27, 2006, the Board conducted a subsequent parole hearing.  The Board concluded that Petitioner was not suitable for parole at that time because he posed an unreasonable risk of danger to society and a threat to public safety if released from prison.

Petitioner challenged the Board's decision denying parole in the County of San Bernardino Superior Court via a state habeas petition.  That court denied his habeas petition on

3

1  February 8, 2007 in a written opinion.  The California Court of Appeal, Fourth District Division

2  Two denied Petitioner's state habeas petition without discussion on March 7, 2007.  The

3  California Supreme Court denied the petition without discussion on May 9, 2007.  Petitioner

4  filed the instant federal habeas petition on May 29, 2007.

5                    III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

6          An application for writ of habeas corpus by a person in custody under judgment of a state

7  court can only be granted for violations of the Constitution or laws of the United States.  See 28

8  U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v.

9  Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).

10  Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism

11  and Effective Death Penalty Act of 1996 ("AEDPA") applies.  See Lindh v. Murphy, 521 U.S.

12  320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim

13  decided on the merits in the state court proceedings unless the state court's adjudication of the

14  claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of,

15  clearly established federal law, as determined by the Supreme Court of the United States; or (2)

16  resulted in a decision that was based on an unreasonable determination of the facts in light of the

17  evidence presented in state court.  See 28 U.S.C. 2254(d).

18          If a state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

19  court must conduct a de novo review of a petitioner's habeas claims.  See Delgadillo v.

20  Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  Additionally, where a state court provides no

21  reasoning to support its conclusion, a federal habeas court independently reviews the record to

22  determine whether the state court was objectively unreasonable in its application of clearly

23  established federal law.  See Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009); see also

24  Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000), overruled on other grounds, Lockyer v.

25  Andrande, 538 U.S. 63 (2003).

26          As a threshold matter, this Court must "first decide what constitutes 'clearly established

4

1   Federal law, as determined by the Supreme Court of the United States.'" <u>Lockyer</u>, 538 U.S. at 71

2   (2003) (quoting 28 U.S.C. § 2254(d)(1)).  "'[C]learly established federal law' under § 2254(d)(1)

3   is the governing legal principle or principles set forth by the Supreme Court at the time the state

4   court renders its decision.'" <u>Id.</u> (citations omitted).  Under the unreasonable application clause, a

5   federal habeas court making the unreasonable application inquiry should ask whether the state

6   court's application of clearly established federal law was "objectively unreasonable." <u>See</u>

7   <u>Williams v. Taylor</u>, 529 U.S. 362, 409 (2000).  Thus, "a federal court may not issue the writ

8   simply because the court concludes in its independent judgment that the relevant state court

9   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

10  application must also be unreasonable." <u>Id.</u> at 411.  Although only Supreme Court law is binding

11  on the states, Ninth Circuit precedent remains relevant persuasive authority in determining

12  whether a state court decision is an objectively unreasonable application of clearly established

13  federal law.  <u>See</u> <u>Clark v. Murphy</u>, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only the

14  Supreme Court's precedents are binding . . . and only those precedents need be reasonably

15  applied, we may look for guidance to circuit precedents.").

16          The first step in applying AEDPA's standards is to "identify the state court decision that

17  is appropriate for our review."  <u>See</u> <u>Barker v. Fleming</u>, 423 F.3d 1085, 1091 (9th Cir. 2005).

18  When more than one court adjudicated Petitioner's claims, a federal habeas court analyzes the

19  last reasoned decision.  <u>Id.</u> (citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991)).  The last

20  reasoned state court decision in this case was from the County of San Bernardino Superior Court

21  which analyzed Claim II on the merits.  While the Superior Court did not discuss Claim I on the

22  merits, "the California Constitution provides that each of the three levels of state courts -

23  Superior Court, Courts of Appeal, and the Supreme Court - has 'original jurisdiction in habeas

24  proceedings.'" <u>Gaston v. Palmer</u>, 417 F.3d 1030, 1036 (9th Cir. 2005) (citing Cal. Const. art. VI,

25  § 10), <u>modified</u> <u>on</u> <u>other</u> grounds, 447 F.3d 1165 (9th Cir. 2006).  As previously stated, the

26  California Supreme Court denied Petitioner's petition without discussion.  The Ninth Circuit

5

1  construes this type of "postcard" denial as a decision on the merits.  See id. at 1038.  Thus, the

2  record will be independently reviewed with respect to Claim I to determine whether the state

3  court was objectively unreasonable in its application of clearly established federal law.

4  See Crittenden v. Ayers, – F.3d –, 2010 WL 3274506, at *13 (9th Cir. Aug. 20, 2010) (stating

5  that it will "perform an independent review of the record to ascertain whether the state court

6  decision was objectively unreasonable, because the state-court adjudication was not reasoned.")

7  (internal quotation marks and citation omitted).

8                          IV.  PETITIONER'S CLAIMS FOR REVIEW

9       A.  Claim I

10          In Claim I, Petitioner argues that the Board violated his plea agreement when it denied

11  him the benefit of his plea.  Petitioner asserts that, "the parties agreed that the circumstances of

12  Petitioner's conduct would warrant that he has a right to be released upon parole after serving a

13  minimum term of imprisonment of 15-years minus credit under Penal Code section 190, or a

14  maximum base term established pursuant to Penal Code section 3041, subd. (A) of either 16-17-

15  18 years."  (Pet'r's Pet. at p. 28.)

16          "'Plea agreements are contractual in nature and are measured by contract law standards.'"

17  United States v. De la Fuente, 8 F.3d 1333, 1337 (9th Cir. 1993) (citing United States v. Keller,

18  902 F.2d 1391, 1393 (9th Cir. 1990).  Petitioner fails to state a valid claim for federal habeas

19  relief.  Petitioner was sentenced to fifteen years to life imprisonment with the *possibility* of

20  parole.  (See Resp't's Answer, Ex. 1 (Abstract of Judgment) (emphasis added); see also Pet'r's

21  Pet. at Ex. A at p. 9 (Criminal Minute Order) ("Defendant is committed to State Prison for the

22  term prescribed by Law as to ct 1 15 yrs to life.")   Petitioner does not show that his plea

23  agreement was conditioned in any way upon his receipt of the Board's favorable parole decision

24  at some point.  See, e.g., James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations

25  which are not supported by a statement of specific facts do not warrant habeas relief.").

26  Petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the

6

1   United States to receive federal habeas relief.   See, e.g., Silvia v. Woodford, 279 F.3d 825, 835

2   (9th Cir. 2002).  Petitioner fails to meet this requirement in arguing that the denial of his parole

3   violated his plea agreement.

4         Petitioner alludes to the fact that he was under medication during the plea proceedings

5   such that his mental faculties were slightly impaired and that his counsel was ineffective when

6   counsel purportedly told Petitioner not to inform the trial court about his medications.  (See

7   Pet'r's Pet., Ex. E at ¶ 4-5.)  Thus, Petitioner appears to seek to collaterally attack his underlying

8   conviction in asserting that his plea was not knowing or intelligent.  See Brady v. United States,

9   397 U.S. 742, 748 (1970) ([Guilty pleas] must be knowing, intelligent acts done with sufficient

10  awareness of the relevant circumstances and likely consequences.").  The statute of limitations

11  for federal habeas corpus petitions is set forth in 28 U.S.C. § 2244(d)(1) which states:

12              A 1-year period of limitation shall apply to an application for a writ
                of habeas corpus by a person in custody pursuant to the judgment
13              of a State court.  The limitation period shall run from the latest of –
                (A)  the date on which the judgment became final by the
14              conclusion of direct review or the expiration of the time seeking
                such review;
15              (B) the date on which the impediment to filing an application
                created by State action in violation of the Constitution or laws of
16              the United States is removed, if the applicant was prevented from
                filing by such State action;
17              (C) the date on which the constitutional right asserted was initially
                recognized by the Supreme Court, if the right has been newly
18              recognized by the Supreme Court and made retroactively
                applicable to cases on collateral review; or
19              (D) the date on which the factual predicate of the claim or claims
                presented could have been discovered through the exercise of due
20              diligence.

21  Petitioner's conviction occurred in 1993 and he did not appeal nor did he file any habeas

22  petitions with respect to the judgment of conviction.  (See Pet'r's Pet. at p. 1-2.)  Because

23  Petitioner's conviction became final prior to AEDPA's enactment on April 24, 1996, the one-

24  year statute of limitations began to run on April 25, 1996, and expired one year later, on April 24,

25  1997 with respect to his argument regarding a purported unknowing and unintelligent plea.  See

26  Malcolm v. Payne, 281 F.3d 951, 955 (9th Cir. 2002) (where state prisoner's conviction became

1  final prior to AEDPA's enactment, AEDPA's one-year statute of limitations begins to run on

2  April 25, 1996, the day after AEDPA was enacted).

3        However, Petitioner does not only assert that his plea was not knowing and intelligent

4  because of his medication and due to his counsel's purported ineffectiveness due to statements

5  made to him regarding his medication.  Additionally, Petitioner asserts:

6            That at the time of the negotiated plea of no contest I was under the
             reasonable belief that upon rehabilitating myself, and that upon
7            conforming to prison rules and regulations, and that upon good
             behavior and program participation I would be released upon
8            parole at the completion of the minimum of 10 years of
             imprisonment; Furthermore, that I reasonably understood that the
9            "life" portion of the sentence meant life on parole, and not life in
             prison; that had I been so informed that I would be serving a life
10           sentence of imprisonment, that I would not have entered into the
             negotiated plea of no contest[.]

11

12  (Pet'r's Pet., Ex. E at ¶ 10.)  Thus, to the extent that the factual predicate underlying this

13  argument could not have been discovered until after Petitioner had been incarcerated for ten

14  years, see 28 U.S.C. § 2244(d)(1)(D), the claim would still be time-barred under AEDPA

15  because Petitioner would have discovered the facts at least by 2003 when he was not released on

16  parole.  Nevertheless, Petitioner did not file this federal habeas petition until 2007, well beyond

17  AEDPA's one-year statute of limitations.

18        Therefore, for the foregoing reasons, Petitioner is not entitled to federal habeas relief on

19  Claim I.

20        B.  Claim II

21        In Claim II, Petitioner asserts that the Board's decision violated his federal due process

22  rights because there was a "lack of reliable evidence demonstrating current unreasonable

23  dangerousness."  (Pet'r's Pet. at p. 4.)  The Due Process Clause of the Fourteenth Amendment

24  prohibits state action that deprives a person of life, liberty, or property without due process of

25  law.  A person alleging a due process violation must first demonstrate that he or she was

26  deprived of a protected liberty or property interest, and then show that the procedures attendant

1    upon the deprivation were not constitutionally sufficient.  See Ky. Dep't of Corr. v. Thompson,

2    490 U.S. 454, 459-60 (1989).

3         A protected liberty interest may arise either from the Due Process Clause itself or from

4    state laws.  See, e.g., Bd. of Pardons v. Allen, 482 U.S. 369, 373 (1987).  The United States

5    Constitution does not, in and of itself, create a protected liberty interest in the receipt of a parole

6    date.  See Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).  However, if a state's statutory parole

7    scheme uses mandatory language, it "creates a presumption that parole release will be granted"

8    when or unless certain designated findings are made, thereby giving rise to a constitutional

9    liberty interest.  McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002) (quoting Greenholtz v.

10   Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 12 (1979)).

11        The full panoply of rights afforded a defendant in a criminal proceeding is not

12   constitutionally mandated in the context of a parole proceeding.  See Pedro v. Or. Parole Bd., 825

13   F.2d 1396, 1398-99 (9th Cir. 1987).  The Supreme Court has held that a parole board's

14   procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a

15   decision informing him of the reasons he did not qualify for parole.  See Greenholtz, 442 U.S. at

16   16.

17        As a matter of state law, denial of parole to California inmates must be supported by at

18   least "some evidence" demonstrating current dangerousness.  See Hayward v. Marshall, 603 F.3d

19   546, 562-63 (9th Cir. 2010) (en banc) (citing In re Rosenkrantz, 29 Cal. 4th 616, 128 Cal. Rptr.

20   2d 104, 59 P.3d 174 (2002); In re Lawrence, 44 Cal. 4th 1181, 82 Cal. Rptr. 3d 169, 190 P.3d

21   535 (2008); In re Shaputis, 44 Cal. 4th 1241, 82 Cal. Rptr. 3d 213, 190 P.3d 573 (2008)).

22   "California's 'some evidence' requirement is a component of the liberty interest created by the

23   parole system of the state."  Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010) (per curiam).

24   Thus, a reviewing court such as this one must "decide whether the California judicial decision

25   approving the [Board's] decision rejecting parole was an 'unreasonable application' of the

26   California 'some evidence' requirement or was it 'based on an unreasonable determination of the

                                          9

1   facts in light of the evidence.'"[2]  Hayward, 603 F.3d at 562-63.

2       The analysis of whether some evidence supports denial of parole to a California state

3   inmate is framed by the state's statutes and regulations governing parole suitability

4   determinations.  See Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007), overruled in part on other

5   grounds, Hayward, 603 F.3d 546.  This court "must look to California law to determine the

6   findings that are necessary to deem a prisoner unsuitable for parole, and then must review the

7   record to determine whether the state court decision holding that these findings were supported

8   by 'some evidence' . . . constituted an unreasonable application of the 'some evidence'

9   principle."  Id.

10      California Penal Code section 3041 sets forth the state's legislative standards for

11  determining parole for life-sentenced prisoners.  Section 3041(a) provides that, ""[o]ne year prior

12  to the inmate's minimum eligible release date a panel . . .  shall again meet with the inmate and

13  shall normally set a parole release date."  Cal. Penal Code § 3041(a).  However, subsection (b)

14  states an exception to the regular and early setting of a life-sentenced prisoner's term, if the

15  Board determines "that the gravity of the current convicted offense or offenses, or the timing and

16  gravity of current or past convicted offense or offenses, is such that the consideration of public

17  safety requires a more lengthy period of incarceration for this individual."  Cal. Penal Code §

18  3041(b).

19      Title 15, Section 2402 of the California Code of Regulations sets forth various factors to

20  be considered by the Board in its parole suitability findings for murderers.  "The regulation is

21  designed to guide the Board's assessment of whether the inmate poses 'an unreasonable risk of

22

23          [2] To the extent that the Respondent argues that Petitioner's claim is not cognizable on
    federal habeas review under AEDPA or that Petitioner does not have a federally protected
24  interest in parole, the Ninth Circuit has specifically held that "due process challenges to
    California courts' application of the 'some evidence' requirement are cognizable on federal
25  habeas review under AEDPA," and that "California's 'some evidence' requirement is a
    component of the liberty interest created by the parole system of that state."  Cooke, 606 F.3d at
26  1213 (citing Hayward, 603 F.3d at 561-64).

1  danger to society if released from prison,' and thus whether he or she is suitable for parole." In

2  re Lawrence, 44 Cal. 4th at 1214, 82 Cal. Rptr. 3d 169, 190 P.3d 535.  The Board is directed to

3  consider all relevant, reliable information available regarding:

> the circumstances of the prisoner's social history; past and present
> mental state; past criminal history, including involvement in other
> criminal misconduct which is reliably documented; the base and
> other commitment offenses, including behavior before, during and
> after the crime; past and present attitude toward the crime; any
> conditions of treatment or control, including the use of special
> conditions under which the prisoner may safely be released to the
> community; and any other information which bears on the
> prisoner's suitability for release.

9  15 Cal. Code Regs. § 2402(b).  The regulation also lists several specific circumstances which

10  tend to show suitability or unsuitability for parole.  Id. § 2402(c)-(d).[3]  The overriding concern is

---

12  [3] Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense.  The prisoner committed the offense in an especially
> heinous,  atrocious or cruel manner.  The factors to be considered include:
> > (A) Multiple victims were attacked, injured or killed in the same or
> > separate incidents.
> > (B) The offense was carried out in a dispassionate and calculated manner,
> > such as an execution style murder.
> > (C) The victim was abused, defiled or mutilated during or after the
> > offense.
> > (D) The offense was carried out in a manner which demonstrates an
> > exceptionally callous disregard for human suffering.
> > (E) The motive for the crime is inexplicable or very trivial in relation to
> > the offense.
> (2) Previous Record of Violence.  The prisoner on previous occasions inflicted or
> attempted to inflict serious injury on a victim, particularly if the prisoner
> demonstrated serious assaultive behavior at an early age.
> (3) Unstable social history.  The prisoner has a history of unstable or tumultuous
> relationships with others.
> (4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted
> another in a manner calculated to inflict unusual pain or fear upon the victim.
> (5) Psychological Factors.  The prisoner has a lengthy history of severe mental
> problems related to the offense.
> (6) Institutional Behavior.  The prisoner has engaged in serious misconduct in
> prison or jail.

25  15 Cal. Code Regs. § 2402(c).

26  Circumstances tending to indicate suitability include:

public safety and the focus is on the inmate's *current* dangerousness.  See In re Lawrence, 44

Cal. 4th at 1205, 82 Cal. Rptr. 3d 169, 190 P.3d 535.  Thus, the proper articulation of the

standard of review is not whether some evidence supports the reasons cited for denying parole,

but whether some evidence indicates that the inmate's release would unreasonably endanger

public safety.  See In re Shaputis, 44 Cal. 4th at 1254, 82 Cal. Rptr. 3d 213, 190 P.3d 573.  There

must be a nexus between the facts relied upon and the ultimate conclusion that the prisoner

continues to be a threat to public safety.  In re Lawrence, 44 Cal. 4th at 1227, 82 Cal. Rptr. 3d

169, 190 P.3d 535.  As to the circumstances of the commitment offense, the Lawrence court

concluded that while:

> the Board and the Governor may rely upon the aggravated
> circumstances of the commitment offense as a basis for a decision
> denying parole, the aggravated nature of the crime does not in and
> of itself provide some evidence of current dangerousness to the
> public unless the record also establishes that something in the
> prisoner's pre- or post-incarceration history, or his current
> demeanor or mental state, indicates that the implications regarding

---

> (1) No Juvenile Record.  The prisoner does not have a record of assaulting others
> as a juvenile or committing crimes with a potential of personal harm to victims.
> (2) Stable Social History.  The prisoner has experienced reasonably stable
> relationships with others.
> (3) Signs of Remorse.  The prisoner performed acts which tend to indicate the
> presence of remorse, such as attempting to repair the damage, seeking help for or
> relieving the suffering of the victim, or indicating that he understands the nature
> and magnitude of the offense.
> (4) Motivation for Crime.  The prisoner committed his crime as the result of
> significant stress in his life, especially if the stress has built over a long period of
> time.
> (5) Battered Woman Syndrome.  At the time of the commission of the crime, the
> prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b),
> and it appears the criminal behavior was the result of that victimization.
> (6) Lack of Criminal History.  The prisoner lacks any significant history of violent
> crime.
> (7) Age.  The prisoner's present age reduces the probability of recidivism.
> (8) Understanding and Plans for Future.  The prisoner has made realistic plans for
> release or has developed marketable skills that can be put to use upon release.
> (9) Institutional Behavior.  Institutional activities indicate an enhanced ability to
> function within the law upon release.

Id. § 2402(d).

1      the prisoner's dangerousness that derive from his or her
     commission of the commitment offense remain probative to the
2      statutory determination of a continuing threat to public safety.

3   Id. at 1214, 82 Cal. Rptr. 3d 169, 190 P.3d 535.

4           i. 2006 Board Decision

5      The panel of the Board that presided over Petitioner's 2006 parole suitability hearing

6 considered the factors bearing on Petitioner's suitability for parole and weighed those factors

7 against releasing Petitioner on parole.  The Board stated the following in deciding to deny

8 Petitioner parole:

9      [T]he panel has reviewed all the information presented here at the
     hearing, we've reviewed your files, we listened to the arguments of
10      counsel and reviewed the letters submitted and we rely upon all of
     the above in concluding that you remain unsuitable for parole and
11      that you would continue to pose an unreasonable risk of danger to
     society and a threat to public safety if released from prison.  Our
12      analysis starts with a review of your commitment offense which
     was, we find, carried out an especially cruel and callous manner.  It
13      was carried out in a manner which demonstrated an exceptionally
     callous disregard for human suffering and the motive for the crime
14      was inexplicable or it's hard to understand or if we do understand
     it and if it was because you were mad or because – or somebody
15      was mad because what you believe somebody else was saying [sic].
     It was certainly a very trivial reason and those conclusions derive
16      from the factual circumstances in which you and your crime
     partner determined that the victim needed to be dealt with and your
17      way of dealing with him was to arm yourself with a shotgun and
     obtain separately the shells, because apparently you didn't have
18      them and a knife, take the victim to a remote location where he was
     shot and beaten.  We recognize, as discussed and pointed out, that
19      according to the court transcript and the records you were not – the
     use clause was stricken as to you so you were not the shooter
20      however, that really does not absolve yourself of responsibility for
     this.  It's hard to accept your explanation that you just went there
21      for the fight in light of the tools that you took to go there.  A fight
     does not need a shotgun and shotgun shells and so by arming
22      yourself in that fashion it's certainly reasonable to conclude and the
     offense for which you were convicted would confirm what you do
23      was to – what your intent was is to do exactly what you did and
     that was the common result of both you and your crime partner.  So
24      the panel accepts as – accepts your responsibility as being equal
     with that of your crime partner.

25
     This offense was proceeded by and represented an escalating
26      pattern of criminal conduct and you failed the prior attempts by the

juvenile justice system to correct problems that you had. Obviously you have a tumultuous upbringing, whether it was a lack of ability of your father to provide the guidance that you needed or the persons that you hung around with, it's difficult to ascertain all the reasons why but you had a history of involvement with the juvenile court starting at age 12 and that involvement continued constantly up until the time of this commitment offense with putting you into court, putting you into group homes, being exposed to all the resources of the juvenile court which obviously did not avoid – it wasn't successful in avoiding this commitment offense.

In the institution, in many ways, you've done well.  You've worked to improve yourself educationally and vocationally.  Certainly your involvement with the optical lab and courses that you have taken are positive factors that we recognize.  You seem to have the ability to apply yourself but it was notably the opposite to that positive record was your disciplinary history and most notably the recent disciplinary.  Although not great in number, the totals indicated that you have counseling chrono or minor disciplinary, that being back in December of '96 for participation.  You have four equivalent of CDC 115's, three of those in the youth authority, for serious disciplinary behaviors.  Most important, most noticeable was the last one was last year in March of '05 for fighting and you had one earlier one for fighting and when you describe you [sic] difficulties as what was your problems as a young in the juvenile system, just your problem with your surrounding.  I was the smallest kid and, you know, I had to prove myself.  That is the same kinds of behavior patterns, they look like get repeated when you continually get involved in fights.

You need to understand that the most basic level of evaluation is how you do in your disciplinary behavior in the institution and all of the other good things that we say, when you look at the classes you've taken in alternative to violence or violence prevention, well it's fine to sit in class and learn all those things but if you into a situation where you can't avoid fights, all that seems to go for not. You don't need me to lecture you, sir, and I'm not going to do that but you need to understand that that's the first level of analysis.  If you haven't been disciplinary free for an extended period of time, you're not going to get a date and you need to understand that reality.

We have looked at your psychological report dated April 23rd, 2002 by John Rouse.  That was not totally supportive of release, it describes you as being – level dangerousness as being average for similar inmates incarcerated in this facility, perhaps less than average with inmates including those in facilities that had a higher or more serious level of dangerous inmate.  However, I was prepared without consideration most recent disciplinary [sic].

14

We considered the input of the District Attorney of San Bernardino County. We also considered the letter submitted by the Sheriff's Department of San Bernardino County and you might consider the next time you talk to your counselor's reporter, it's difficult in looking at the description of this commitment offense, I don't know if it was the way it was written or what, it's difficult to get a clear picture of the facts and perhaps the short, succinct description in that letter from the Dan Bernardino Sheriff's Department gives you all the information that you need but anyway it was difficult for us to get through it with that.

Because of the seriousness of the offense and because you're recent disciplinary history and the need for an extended period of disciplinary free behavior in a separate decision, the hearing panel finds it's not reasonable to expect that parole would be granted at hearing during the following four years and we deny you for that period. Three years ago you were given a denial of three years and they told you to remain disciplinary free and that didn't happen so the period is not going to be shorter, it's going to be longer. Take that to heart. If you want a parole date you have to be absolutely disciplinary free. You seem to be going in the right direction in other areas, we recognize and commend you for that. Your parole plans has [sic] developed up to this point are reasonable, we have quarrel with that [sic]. Use the next years to upgrade yourself educationally forward. You have the ability to do that. Put your time to good use in a positive direction so when you return you can show them not only a positive level of achievement in those senses but that you have no disciplinaries.

(Pet'r's Pet., Ex. C at p. 49-55.)

           ii.   2007 Superior Court Decision

On state habeas corpus review, the San Bernardino County Superior Court denied Petitioner's request for habeas relief. In denying the state habeas petition, the Superior Court stated the following:

The Petition of Lowell Hammons for Writ of Habeas Corpus was filed in this Court on January 19, 2007.
Therein, Petitioner contends that;
1) The decision of the parole board to deny him parole, on January 27, 2006, was arbitrary and unreasonable and not supported by the evidence.
Pursuant to the record of the suitability hearing it is evident that the board considered the following factors:
1. Case factors:
Petitioner agreed to accompany Manuel Macias to go "kick the ass" of the murder victim. They armed themselves with a sawed

15

off 12 gauge shotgun and a knife.  Petitioner stopped off along the way to obtain shotgun shells.  Petitioner took the shotgun into the victim's residence.  When there, they threatened the kidnap the victim at gunpoint.  They took the victim to a remote area, and murdered him, by shotgunning and bludgeoning him to death, as an execution.  Petitioner then disposed of the shotgun by giving it to a friend.  Petitioner denied that he used the shotgun.

2.  Pre-Commitment Factors:

His juvenile record was horrendous, including multiple firearms charges, starting at age 12.

3.  Family background.

4.  Drug use, alcohol use.

5.  Parole plans.

6.  His behavior within the institution.

Petitioner started his prison term in 1999.  Prior to that he had been in the Youth Authority.  His record in prison has been generally good with several educational and vocational accomplishments.  However, he has violated prison rules.

7.  Psychological reports.

The board found the Petitioner unsuitable for parole based on the horrendous circumstances of the crime and the pattern of serious criminality from an early age.  Furthermore, Petitioner's discipline record while in prison did not indicate that he would not be a threat to the community if released.

Clearly, the board's decision was based upon evidence and was justified by that evidence.

(Resp't's Answer, Ex. 4.)

iii.  Analysis of Claim II

The issue with this Claim is whether there is "some evidence" that indicates that Petitioner's release would unreasonably endanger public safety.  See In re Shaputis, 44 Cal. 4th at 1254, 82 Cal. Rptr. 3d 213, 190 P.3d 573.  With respect to the commitment offense, the issue is whether there is something in Petitioner's pre or post-incarceration history of his current demeanor or mental state that supports the inference of current dangerousness.  See Hayward, 603 F.3d at 562.

The record includes "some evidence" to support an inference of Petitioner's current dangerousness beyond the circumstances of the commitment offense such that the denial of his parole as the 2006 Board hearing did not violate his due process rights.  For example, both the state court and the Board specifically noted Petitioner's disciplinary infractions while

16

incarcerated, including being cited for mutual combat with the use of force in March 2005, less than one year prior to the January 2006 parole suitability hearing at issue in this case. Furthermore, the state court and the Board both cited to Petitioner's prior juvenile record. Petitioner's juvenile record included firearm and burglary offenses.  (See Pet'r's Pet., Ex. C at p. 18-24.); see also 15 Cal. Code Regs. §§ 2402(c)(2) & 2402(d)(1).  This evidence cited by the state court (and the Board) establishes a modicum of evidence to create a nexus between the facts relied upon and the ultimate conclusion that the prisoner continues to be a threat to public safety. See In re Lawrence, 44 Cal. 4th at 1226, 82 Cal. Rptr. 3d 169, 190 P.3d 535 (stating that the deferential standard of review requires credit to be given to the findings if they are supported by a modicum of evidence).

Accordingly, under Hayward/Lawrenece, there was a nexus of the facts relied upon and Petitioner's current dangerousness.  There was a modicum of evidence in the record that supported the Board's ultimate determination that Petitioner posed a current risk of danger to society such that Petitioner's constitutional rights were not violated by the denial of his parole at the 2006 suitability hearing.  Petitioner is not entitled to federal habeas relief on Claim II.

## V.  PETITIONER'S REQUESTS

### A.  Request for an Order to Show Cause

Petitioner requests "an order to show cause" in his petition.  (Pet'r's Pet. at p. 39.) Respondent answered the Petition on September 7, 2007.  Accordingly, Petitioner's request for an order to show cause is denied as moot.

### B.  Request for the Appointment of Counsel

Petitioner also requests the appointment of counsel.  There currently exists no absolute right to the appointment of counsel in habeas proceedings.  See, e.g., Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996).  However, 18 U.S.C. § 3006A authorizes the appointment of counsel at any stage of the case "if the interests of justice so require."  In the present case, the interests of justice do not so require to warrant the appointment of counsel.  Accordingly, Petitioner's request

1    for the appointment of counsel is denied.

2        C.  Request for Discovery

3        Next, Petitioner requests "reasonable discovery."  (Pet'r's Pet. at p. 39.)  Parties to a

4    habeas proceeding are not entitled to discovery as a matter of course.  See Bracy v. Gramley, 520

5    U.S. 899, 904 (1997).  Rather, "[a] judge may, for good cause, authorize a party to conduct

6    discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."

7    Rule 6(a), Rules Governing § 2254 Cases; see also Bracy, 520 U.S. at 904.  Good cause is shown

8    "where specific allegations before the court show reason to believe that the petitioner may, if the

9    facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  Id. at 908-09

10   (internal quotation marks and citation omitted); see also Pham v. Terhune, 400 F.3d 740, 743

11   (9th Cir. 2004).  A request for discovery "must also include any proposed interrogatories and

12   requests for admission, and must specify any requested documents."  Rule 6(b), Rules Governing

13   § 2254 Cases.

14       In this case, Petitioner failed to show good cause to warrant granting his request for

15   discovery and he has not shown reason to believe that he would be entitled to relief if facts are

16   more fully developed.

17       D.  Request for an Evidentiary Hearing

18       Finally, Petitioner requests an evidentiary hearing on his Claims.  Pursuant to 28 U.S.C. §

19   2254(e)(2), a district court presented with a request for an evidentiary hearing must first

20   determine whether a factual basis exists in the record to support a petitioner's claims and, if not,

21   whether an evidentiary hearing "might be appropriate."  Baja v. Ducharme, 187 F.3d 1075, 1078

22   (9th Cir. 1999); see also Earp v. Ornoski, 431 F.3d 1158, 1166-67 (9th Cir. 2005).  A petitioner

23   requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim

24   for relief."  Earp, 431 F.3d at 1167 (citations omitted).  To show that a claim is "colorable," a

25   petitioner is "required to allege specific facts which, if true, would entitle him to relief."  Ortiz v.

26   Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted).

18

1    In this case, an evidentiary hearing is not warranted.  Petitioner failed to demonstrate that

2 he has a colorable claim for federal habeas relief for the reasons stated in <u>supra</u> Part IV.

3                                      VI.  CONCLUSION

4    For the foregoing reasons, IT IS HEREBY ORDERED that:

5    1.  Petitioner's request for an order to show cause is DENIED AS MOOT;

6    2.  Petitioner's request for the appointment of counsel is DENIED;

7    3.  Petitioner's request for leave to conduct discovery is DENIED; and

8    4.  Petitioner's request for an evidentiary hearing is DENIED.

9    IT IS HEREBY RECOMMENDED that Petitioner's Petition for writ of habeas corpus be

10 DENIED.

11    These findings and recommendations are submitted to the United States District Judge

12 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

13 after being served with these findings and recommendations, any party may file written

14 objections with the court and serve a copy on all parties.  Such a document should be captioned

15 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

16 shall be served and filed within seven days after service of the objections.  The parties are

17 advised that failure to file objections within the specified time may waive the right to appeal the

18 District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).  In any objections he

19 elects to file, petitioner may address whether a certificate of appealability should issue in the

20 event he elects to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules

21 Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability

22 when it enters a final order adverse to the applicant).

23 //

24 //

25 //

26 //

DATED:  November 12, 2010

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE